**Robert CHAUSSARD**

v.

**Thomas FULCOMER, Warden**

**Appeal of Robert W. CHAUSSARD.**

**No. 86–3412.**

United States Court of Appeals,
Third Circuit.

Argued March 2, 1987.
Decided April 27, 1987.

George E. Schumacher, Joel B. Johnston (argued), Federal Public Defender, Pittsburgh, Pa., for appellant.

Charles S. Hersh, Lorinda L. Hinch (argued), Asst. Dist. Atty., Dist. Atty's Office, Mercer, Pa., for appellee.

Before GIBBONS, Chief Judge, SEITZ and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Robert Chaussard appeals from an order of the district court dismissing his habeas corpus petition. We have jurisdiction under 28 U.S.C. §§ 1291, 2254 (1982).

### I.

Chaussard was convicted in state court of rape and recklessly endangering another person. The Superior Court of Pennsylvania affirmed the judgment of sentence. Chaussard filed a pro se petition requesting allocatur. Chaussard's then counsel filed a second petition. The Supreme Court of Pennsylvania denied both petitions. Chaussard did not institute Post Conviction Hearing Act (PCHA) proceedings. Rather, he petitioned the district court for a writ of

habeas corpus. The district court dismissed the petition because it concluded that it contained exhausted and unexhausted federal claims. This appeal followed.

We narrate the evidence offered in the state criminal trial. On February 4, 1982, the prosecutrix was raped at gunpoint in her home. That afternoon, she gave the police a statement which included a description of the assailant, his clothing and weapon. She sketched the assailant's face and a distinctive patch she saw on the assailant's shirt. The next day, the prosecutrix and a police officer tried to produce a composite picture of the assailant. The prosecutrix was not satisfied with the composite.

At trial, Officer Stephens testified that, on the date of the rape, the prosecutrix told him the assailant's shirt had a rust streak across the back. The officer produced undated notes corroborating this information. The rust stain, however, was not mentioned in the final police report.

On February 20, 1982, Police Chief Reinhart took the prosecutrix to a hypnotist, apparently to aid in the investigation of the rape. The session lasted approximately one hour and only the hypnotist and the prosecutrix were present. The session was tape recorded, and the hypnotist took notes. The audio tape was given to Chief Reinhart. The hypnotist recalls giving Reinhart his personal notes, although Reinhart does not recall this. In any event, the notes cannot be located. Reinhart destroyed the audio tape after about two months, and prior to Chaussard's arrest, in response to a memo from the district attorney stating that the use of hypnosis had been disapproved by the Pennsylvania Supreme Court.

On April 30, 1982, the prosecutrix looked out her window in response to a continuous knocking. She saw Robert Chaussard on her porch. She immediately called the police because she thought Chaussard was the man who raped her. The police arrested Chaussard nearby.

The state trial court found that the district attorney's office did not learn that the prosecutrix had been hypnotized until approximately thirty days before the November 12, 1982 hearing in this case.

As indicated, Chaussard was tried and convicted and unsuccessfully appealed. He then filed a petition for a writ of habeas corpus.

## II.  EXHAUSTION

Fairly read, Chaussard's petition for a writ of habeas corpus raises four constitutional challenges: (1) that he was denied his right to meaningfully confront and cross examine the prosecutrix because he was unable to reconstruct her hypnosis; (2) that he was denied due process by the deliberate destruction of the tape recording of the hypnosis; (3) that he was denied equal protection and due process because the trial court failed to give a more complete cautionary instruction on hypnosis and trial testimony; and (4) that the trial court committed constitutional error by failing to grant a post-verdict evidentiary hearing on whether two of the Commonwealth's witnesses committed perjury.

The district court determined that Chaussard's habeas petition contained exhausted and unexhausted claims and dismissed the petition. Our review of this issue is plenary. In *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court construed 28 U.S.C. §§ 2254(b), (c) to require exhaustion of state remedies as to each claim before a prisoner may file a habeas petition in federal court. If the habeas petition contains any claim that has not been fairly presented to the highest state tribunal, the district court must dismiss the petition. At that point, the prisoner may return to state court to litigate the unexhausted claims or file an amended petition in federal court containing only the exhausted claims.

The Commonwealth argues that the district court correctly dismissed the habeas petition for failure to exhaust state remedies.[1] First, the Commonwealth argues

---

1. Chaussard argues that the Commonwealth has waived exhaustion. We have held, however,

that a state prosecutor cannot waive the state interests embodied in the exhaustion rule. *See*

that because Chaussard did not raise his third and fourth claims in the Superior Court, he has not given any Pennsylvania appellate court the realistic opportunity to correct the alleged defects, and, therefore, has not exhausted his state remedies as to these claims. In effect, the Commonwealth argues that we cannot consider the petition for allocatur in determining whether Chaussard exhausted his state remedies because Chaussard could not, as a matter of right, require review by the Pennsylvania Supreme Court. Second, the Commonwealth argues that the petition for allocatur itself did not include each claim raised in the federal habeas petition. The Commonwealth therefore asserts that the identical federal claims were not presented in the state court papers.

■ While it is true that direct review by the Supreme Court of Pennsylvania is a matter of discretion, the exhaustion rule is satisfied when the state courts have had an "opportunity to pass upon and correct" alleged violations of a prisoner's federal constitutional rights. *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963); *see Gonce v. Redman*, 780 F.2d 333 (3d Cir.1985); *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42 (3d Cir.1984). The Pennsylvania Supreme Court's discretionary refusal to review the merits of Chaussard's convictions does not affect the fact that Chaussard, in his petition for allocatur, gave the highest Pennsylvania state court the opportunity to correct each alleged constitutional infirmity in his criminal convictions. *Cf. Smith v. Dignon*, 434 U.S. 332, 333–334, 98 S.Ct. 597, 598–599, 54 L.Ed.2d 582 (1978) (per curiam) (state court failure to rule explicitly on federal challenge is no bar to federal habeas relief). By raising each federal claim in his petition and brief to the Pennsylvania Supreme Court, Chaussard has satisfied the exhaustion requirement.

■ This appeal involves a further exhaustion question of whether Chaussard raised substantially the same federal claims in state court. Exhaustion requires that each claim be "fairly presented" to the state courts. Fair presentation requires that before a particular claim may be asserted in federal court, the same method of analysis must have been made available to the state courts. *See Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971) ("the substance of the federal habeas corpus claim must first be presented to the state courts"); *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir.1976) (en banc).

■ The Commonwealth argues that Chaussard has presented a two-part sixth amendment challenge in federal court, challenging the admissibility of post-hypnosis testimony generally and when there is no tape of the hypnosis, in contrast to the single sixth amendment challenge raised in state court. We reject the Commonwealth's argument that Chaussard has made an independent "memory hardening" sixth amendment challenge in federal court. Chaussard emphasizes that aspect of hypnosis only as a predicate to his single sixth amendment claim that the destruction of the recording of the hypnosis made meaningful confrontation and cross examination impossible. In his reply brief, Chaussard specifically states "the violations of [petitioner's] sixth amendment rights flow jointly from the use of hypnosis and the destruction of the crucial audio tapes regarding that contested hypnosis session." The argument is substantially equivalent to the sixth amendment challenge made in state court, although the emphasis may be slightly different. As to this issue, the state courts "have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor, supra*, 404 U.S. at 276, 92 S.Ct. at 512.

■ There is no question that Chaussard, in his petition for allocatur, alleged a due process violation by the destruction of the tape. The same can be said of the failure to provide an adequate cautionary instruction. As to the failure to provide an evidentiary hearing, the Commonwealth argues that Chaussard did not fairly present

*Trantino v. Hatrack*, 563 F.2d 86, 96 (3d Cir. 1977).

this to the state courts because, in identifying the issues in his petition for allocatur, Chaussard did not explicitly rely on the United States Constitution. In the argument section of the petition, however, Chaussard relied on federal constitutional cases and argued that a criminal conviction obtained by the State with the knowing use of false and perjured testimony violates the fourteenth amendment and due process clause. Thus, Chaussard gave the state courts the opportunity to rule on this federal challenge. *See Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir.), *cert. den.,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980).

We conclude that Chaussard has fairly presented each of his federal claims to the state courts and, therefore, has complied with the exhaustion prerequisite to federal habeas relief.

### III.

Because no additional facts are required to resolve the federal constitutional challenges to Chaussard's conviction, we will dispose of those issues on this appeal.

### A. CONFRONTATION AND CROSS EXAMINATION

In reviewing Chaussard's petition, we must address the problem of hypnosis and the sixth amendment. Chaussard makes the following constitutional challenge to his conviction: Hypnosis affects human memory by making the subject susceptible to suggestion, by causing the subject to engage in confabulation (fabrication of details), and by artificially increasing the subject's certainty of his recollections as described during hypnosis. Given these consequences, Chaussard argues that the defendant must be allowed to explore fully the hypnotic session during cross examination of the witness. During cross-examination, the argument continues, the defendant must be able to explore whether the witness's testimony is a product of actual memory or hypnotic suggestion. To cross-

examine effectively a witness who testifies post-hypnosis, therefore, the defendant must be able to reconstruct the hypnosis session itself. Reconstruction is possible, according to Chaussard, only if there is a recording of the hypnosis. The defendant needs an actual recording to explore what was said during hypnosis and whether any hypnotic suggestions were made. Chaussard concludes by arguing that, in the absence of a recording, effective cross-examination on the identification issue was impossible and thus the prosecutrix's testimony violated the sixth amendment.[2]

The Commonwealth does not contest Chaussard's allegations as to the potential effects of hypnosis on the human memory. Nor need we resolve the scientific dispute over whether hypnosis involves memory distortion or a heightened state of awareness. But to say that hypnosis may have increased the prosecutrix's certainty that her subsequent identification of Chaussard was accurate does not necessarily imply that the testimony violated the confrontation clause.

The confrontation clause provides "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Supreme Court has held that this applies to the states by the fourteenth amendment. *See Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). "A primary interest secured by [the confrontation clause] is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1075, 13 L.Ed.2d 934 (1965). Cross-examination "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). It allows the defendant "to impeach the witness's credibility and to expose the witness's biases and possible motives for testifying." *Clay v. Vose,* 771 F.2d 1, 4 (1st Cir.1985), *cert. den,* —— U.S. ——, 106 S.Ct. 1212, 89 L.Ed.2d 324 (1986). The clause

---

**2.** Chaussard does not argue that post-hypnosis testimony is per se inadmissible under the sixth amendment.

requires only that the criminal defendant have the opportunity for effective cross-examination.

Chaussard was not denied his right to confront and cross-examine the prosecutrix in the conventional sense. The prosecutrix testified at trial and was rigorously cross-examined by Chaussard's trial counsel. Chaussard, through his counsel, had the opportunity to test the reliability of the prosecutrix's trial testimony. Chaussard was free to explore whether the prosecutrix had the opportunity to observe her attacker's face during the rape. The prosecutrix was questioned regarding the statement and sketch she made for the police the day of the rape. These questions developed for the jury the issues of whether the prosecutrix had a pre-hypnosis source for her trial testimony and whether her testimony was consistent with her original statements. Chaussard also could have probed any difference between the prosecutrix's pre-hypnosis confidence in the accuracy of her perceptions of the attacker and her subsequent recollection of his physical characteristics and her confidence in her post-hypnosis identification of Chaussard. No allegation has been made that the prosecutrix was uncooperative during cross-examination or that the trial court impermissibly limited the scope of questioning.

The hypnotist testified at trial and was cross-examined. While cross-examination of the hypnotist cannot replace cross-examination of the prosecutrix, the questioning provided Chaussard with the opportunity to develop for the jury the circumstances surrounding the hypnosis and the procedures that were used.

■ The fact that the prosecutrix was hypnotized after the rape but before her identification of Chaussard was made clear to the jury. The trial court specifically instructed the jury that it could not rely on the prosecutrix's testimony to the extent it found the testimony was the product of hypnosis.

Taken together, these circumstances adequately protected Chaussard's right to confront and cross-examine the prosecutrix. Chaussard had sufficient opportunities to test the reliability of the prosecutrix's testimony.

We cannot agree that examination of the tape of the hypnosis would alleviate the alleged defects in the testimony at issue here. The purported flaw in post-hypnosis testimony is that one cannot determine if the testimony is the product of hypnosis or actual memory. Because there was no pre-hypnosis suspect, hypnosis logically could not have been used to suggest that the victim focus her suspicions on Chaussard. This case is unlike *Clay v. Vose*, 771 F.2d 1 (1st Cir.1985), where there was a tentative identification of the petitioner before the hypnosis and, after the hypnosis, the witness became certain that the petitioner had committed the crime. In *Clay*, there was a demonstrated hardening of the identification of the petitioner. In the present case, the prosecutrix did not become more certain that Chaussard had raped her because she had not, as yet, identified him. There was no pre-hypnosis suspect, not because the prosecutrix had been unable to pick Chaussard out from a line up or photo array, but because she apparently did not have a second opportunity to observe him until sometime after the rape and the hypnosis.

Given the absence of a suspect until Chaussard appeared at the prosecutrix's home in early April, it strains logic to say the tape would have shown that the prosecutrix received a hypnotic suggestion that resulted in her identification of Chaussard. We are not willing to find a sixth amendment violation based on the bare possibility that the hypnotist or police chief suggested that the prosecutrix identify the next stranger to knock at her door as the man who raped her. There was a world of possible suspects at the time of the hypnosis and we cannot see how the tape would demonstrate that the eventual identification of Chaussard was the result of artificial, hypnotic memory, rather than actual memory.

Nor are we convinced that the tape of the hypnosis could have been used to show the prosecutrix engaged in confabulation during the hypnosis. There was a demon-

strated pre-hypnosis source for the prosecutrix's trial testimony—her observations and statements on the day of the rape. At the suppression hearing, the state trial court found that no new information was contained on the tape of the hypnosis. This finding undercuts the allegation of confabulation.

No doubt it would have been preferable to have the tape, but given the absence of any pre-hypnosis identification of a suspect, we cannot believe the tape would show the hypnosis transformed the prosecutrix's memories of the rape such that she was more certain of the accuracy of her trial identification of Chaussard than she otherwise would have been.

Our ruling is not inconsistent with the conclusions reached in those circuits that have addressed the constitutionality of post-hypnosis testimony. *See Beck v. Norris,* 801 F.2d 242 (6th Cir.1986); *Harker v. Maryland,* 800 F.2d 437 (4th Cir.1986); *Wicker v. McCotter,* 783 F.2d 487 (5th Cir.), *cert. den.,* —— U.S. ——, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Clay v. Vose,* 771 F.2d 1 (1st Cir.1985). Admittedly, Chaussard's petition presents a more difficult case because, unlike the courts in *Beck, Harker,* and *Clay,* we cannot rely on the availability of a recording of the hypnosis in rejecting the sixth amendment challenge.[3] No circuit court has held, however, that the availability of a recording of the hypnosis is in all cases a constitutional prerequisite to the admissibility of post-hypnosis testimony.[4] Accordingly, we reject Chaussard's sixth amendment argument.

## B. DUE PROCESS AND DESTRUCTION OF EVIDENCE

Chaussard claims he was denied due process of law because the Commonwealth

deliberately destroyed the tape of the hypnosis. This argument focuses on the potential exculpatory value of the tape rather than the effect the hypnosis had on the prosecutrix's memory.

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the United States Supreme Court addressed a state's duty to preserve evidence on behalf of criminal defendants. The Court held that California was not constitutionally required to preserve breath samples taken to determine an individual's blood alcohol concentration. First, California had destroyed the breath samples in good faith compliance with its normal procedures. *Id.* at 488, 104 S.Ct. at 2533. Second, there was no indication that the breath samples were constitutionally material to the defense. "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defense would be unable to obtain comparable evidence by other reasonably available means." *Id.*

■ In this case, the state court's factual findings assist us in determining whether the Commonwealth violated its constitutional duty to preserve evidence. Under the habeas statute, state findings on the merits of a factual issue are presumptively correct unless one of several conditions is met. *See* 28 U.S.C. § 2254(d). The state trial court found that the police chief "received no new information from the tape and did not receive any information he did not already know. The information was consistent with the previous statements made by [the prosecutrix]." Given this

---

**3.** The opinion in *Wicker* does not state whether a recording of the hypnosis was reviewed by the petitioner at the time of his state trial.

**4.** *United States v. Adams,* 581 F.2d 193, 199 n. 12 (9th Cir.), *cert. den.,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), is not to the contrary. The court's statement that, at a minimum, some recording must be made of the hypnosis was an evidentiary, not a constitutional ruling. For other discussions of the law of evidence as it

relates to post-hypnosis testimony, *see generally United States v. Keplinger,* 776 F.2d 678 (7th Cir.1985), *cert. den.,* —— U.S. ——, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *United States v. Harvey,* 756 F.2d 636 (8th Cir.), *cert. den.,* —— U.S. ——, 106 S.Ct. 98, 88 L.Ed.2d 79 (1985); *United States v. Valdez,* 722 F.2d 1196 (5th Cir. 1984); *United States v. Awkard,* 597 F.2d 667 (9th Cir.), *cert. den.,* 444 U.S. 969, 100 S.Ct. 460, 62 L.Ed.2d 383 (1979).

finding, we cannot say the tape was a source of potentially exculpatory material not otherwise available to Chaussard. Chaussard had the opportunity to review the prosecutrix's statements to the police. These statements were exculpatory only to the extent that they were arguably inconsistent with the prosecutrix's trial testimony. These alleged inconsistencies were brought out on cross-examination. Because the tape contained nothing more that would have assisted Chaussard's defense, its absence did not result in a due process violation. Because we have rejected the due process claim on the materiality prong of *Trombetta*, we express no opinion on the police chief's good or bad faith.

## C. OTHER CLAIMS

Chaussard contends that he was denied due process of law and equal protection when the state trial judge refused to give a more complete cautionary instruction on the use of post-hypnosis testimony. He also challenges the constitutionality of the state's failure to afford him a post-verdict evidentiary hearing on the allegation that the Commonwealth knowingly used perjured testimony at trial. At oral argument, the Commonwealth argued that Chaussard waived these challenges by committing a procedural default in state court. Because the procedural default rule goes to the appropriate exercise of the federal power to entertain a habeas petition, rather than the very existence of that power, *see Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fay v. Noia, supra.*, we will assume without deciding that the alleged procedural default is no bar to federal adjudication of these claims.

We consider first the refusal to provide a more complete cautionary instruction. Given our analysis of Chaussard's sixth amendment challenge and the fact that the trial judge gave a limited cautionary instruction on post-hypnosis testimony, we believe the absence of a more complete cautionary instruction does not present a challenge of constitutional magnitude.

Similarly, Chaussard's claim that he was improperly denied a post-verdict evi-dentiary hearing on the perjury allegations does not render his conviction constitutionally defective, particularly since he relies on no new evidence that would support the claim.

## IV.

For the foregoing reasons, we will affirm the order of the district court dismissing Chaussard's petition for a writ of habeas corpus.