**Thomas A. BISKUP, Appellant,**

v.

**Gary McCAUGHTRY, Appellee.**

No. 93–2895.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1994.

Decided March 23, 1994.

246

Mark J. Rogers (argued), Angermeier & Rogers, Milwaukee, WI, for petitioner-appellant.

David J. Becker, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for respondent-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and SHARP, District Judge.*

## I.

ALLEN SHARP, District Judge.

The appellant, Thomas A. Biskup, was on March 17, 1988, charged in a multi-count criminal complaint with attempted first-degree murder, aggravated battery, injury by conduct regardless of life, attempted arson, attempted intimidation of a witness, two counts of theft of a firearm, and nine counts of burglary.

The case went through procedural preliminaries, including a three-day preliminary examination in April, 1988, in the state court

* The Honorable Allen Sharp, Chief Judge, United States District Court for the Northern District of Indiana, sitting by designation.

for Walworth County, State of Wisconsin. At the preliminary examination, appellant was bound over on all counts except the attempted first-degree murder. A trial by jury was had in that Wisconsin state court in March, 1989, and it returned a verdict of guilty on seven of the twelve counts before it. Appellant was found guilty of injury by conduct regardless of life, intermediate battery, and five counts of burglary. He was sentenced to two years imprisonment on the intermediate battery conviction, and to 10 years imprisonment on both the injury by conduct regardless of life and burglary, party to crime conviction, all sentences to be served consecutively, for a total of 22 years. On the remaining four burglaries, he was sentenced to 10 years probation consecutive prison term and was ordered to pay restitution.

District 2 of the Wisconsin Court of Appeals affirmed the aforesaid convictions and sentences in an unpublished decision. The Wisconsin Supreme Court denied review. A petition for relief under 28 U.S.C. § 2254 was filed in the United States District Court for the Eastern District of Wisconsin and denied. The district judge issued a certificate of probable cause, and this appeal followed.

The issues raised before the district court were that the state trial court erred when it refused to sever counts; it erred in admitting hypnotically refreshed testimony; prosecutorial delay; and insufficient evidence.[1] The district court denied relief on all of these assertions.

■ It is elementary that the district court, under § 2254, must focus on alleged violations of the federal constitution, laws and treaties. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. den.,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). It is also elementary that the federal question jurisdiction of the district court under § 2254 cannot be invoked simply to require state officials to comply with state law or to review alleged violations of state law. That concept was pointedly and recently made by

Judge Bauer in *Stephens v. Miller,* 13 F.3d 998 (7th Cir.1994) en banc, as follows:

> Stephens' first contention need not detain us long. He argues that we should grant his petition because the Indiana trial court and the Indiana Supreme Court misapplied the Indiana Rape Shield Statute under Indiana law. That may be, but whether the Indiana courts correctly applied their own law is, by itself, no concern of ours. Federal habeas actions do not lie for mere errors of state laws. We ask only whether Indiana denied Stephens his rights under the Constitution, laws or treaties of the United States. We therefore will not consider the merits of his claim that the Indiana courts misapplied their own law.

*Stephens,* 13 F.3d at 1001 (cites omitted). *See also Jenkins v. Gramley,* 8 F.3d 505 (7th Cir.1993).

## II.

■ The question with regard to the sufficiency of the evidence requires the district court to examine the evidence in the state record as to whether a reasonable trier of fact, in this case a state court jury, would find this petitioner guilty beyond a reasonable doubt of the various crimes of which he was convicted in the state trial court in Wisconsin. The relevant formulation is in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Justice Stewart, speaking for the Supreme Court of the United States in *Jackson,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), stated:

> A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court

---

1. No argument is advanced as to inconsistent or irreconcilable jury verdicts. *See United States v.*

*Walker,* 9 F.3d 1245, 1248 (7th Cir.1993).

and adequate state postconviction remedies to redress possible error. See 28 U.S.C. § 2254(b), (d). What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right—is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791. The Supreme Court in *Jackson* held:

We hold that in a challenge to a conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt.

*Id.* (footnote omitted). *See also Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), *cert. den.,* 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 438 (1988); *United States ex rel. Haywood v. O'Leary,* 827 F.2d 52 (7th Cir.1987); *Bryan v. Warden, Indiana State Reformatory,* 820 F.2d 217 (7th Cir.1987), *cert. den.,* 484 U.S. 867, 108 S.Ct. 190, 98 L.Ed.2d 142 (1987); *Shepard v. Lane,* 818 F.2d 615 (7th Cir.), *cert. den.,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987); and *Perri v. Director, Department of Corrections,* 817 F.2d 448 (7th Cir.), *cert. den.,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987).

A review of the record in the light favorable to the prosecution convinces the court that a rational trier of fact could readily have found the petitioner guilty beyond a reasonable doubt of the crimes for which he there stands convicted.

■ Following *Jackson, supra,* there is an increasingly long line of cases in this circuit which suggest that the facts found by the state courts are presumed correct. *See Andersen v. Thieret,* 903 F.2d 526, 531 (7th Cir.1990). The statement of facts found in the unpublished opinion in District 2 of the Court of Appeals of Wisconsin are as follows:

On the evening of April 7, 1984, Biskup's wife, Suzanne, was rendered a permanent paraplegic by a hit-and-run driver as she was walking on the shoulder of County Trunk H with Biskup. On March 17, 1988, the state issued a criminal complaint charging Biskup with party to the crimes of attempted first-degree murder, aggravated battery, and injury by conduct regardless of life in connection with this incident. The state alleged that Biskup had conspired with his friend Craig Kolz to "scare" Suzanne into keeping quiet about several burglaries Biskup had committed prior to 1984. The alleged plan called for Biskup to arrange for Suzanne to walk along the edge of the highway while Kolz would drive by and "nick" or "brush" her.

The same criminal complaint also charged Biskup with attempted arson, attempted intimidation of a witness, two counts of theft of a firearm, and nine counts of burglary. Following a preliminary examination, Biskup was bound over for trial on all counts except attempted first-degree murder. Biskup then moved to sever the property counts from the other charges, to suppress Suzanne's hypnotically refreshed recollection, to dismiss the property crimes due to prosecutorial delay, and to dismiss the injury by conduct regardless of life and battery charges due to multiplicity. The trial court denied the motions.

The case was tried to a jury. Suzanne testified that on the morning of April 7, 1984, she told Biskup she wanted a divorce and custody of their only child; when Biskup refused, she threatened to turn him in for several burglaries he had committed. Biskup testified that this conversation never took place and that he and Suzanne were not contemplating divorce.

That afternoon, Kolz visited the Biskup house. Kolz testified that at this meeting Biskup asked him to carry out the plan to "scare" Suzanne. Biskup denied the existence of any such plan.

Around 9:30 that evening, Suzanne and Biskup went to get hamburgers. The restaurant was under construction, with nails and boards on the ground. Suzanne testified that on the way home, Biskup pulled off the road twice because he thought there was something wrong with the truck; when Biskup returned to the truck the second time Suzanne heard a hissing sound; they proceeded a short distance, but the truck started shaking and they had to stop a third time. The truck had a flat tire. Suzanne and Biskup were walking along the shoulder of the highway to find a telephone when Kolz drove by and struck Suzanne with this car. Suzanne's hypnotically-affected testimony was admitted into evidence, wherein she stated that Biskup pushed her immediately before she was hit by the car.

Under 28 U.S.C. § 2254(d), the district court exercising jurisdiction under § 2254 may presume the facts as found by the second highest court in Wisconsin as correct.

### III.

 Notwithstanding the basic dimensions of collateral review under § 2254, this petitioner is hard pressed to find a constitutional violation in the Wisconsin state trial court's action in denying a severance, especially in view of the provisions of Wisconsin statute § 971.12(1), which states:

Crimes may be charged and tried together if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Section 971.12(1), Stats.

*See also State v. Bettinger*, 100 Wis.2d 691, 698, 303 N.W.2d 585, 589 (1981). The standard for the district court under § 2254 is that an improper joinder constitutes a federal constitutional violation only if the prejudice was so great as to deny a fair trial. *See Leach v. Kolb*, 911 F.2d 1249, 1258 (7th Cir.), *cert. den.*, 498 U.S. 972, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990). The state prosecutor's theory was that the property crimes are the motive for the assault on Suzanne, and that the assault demonstrates a consciousness of

guilty of the property crimes. The state trial court ruled that an insufficient showing of actual prejudice had not been made in regard to joinder. The district court made a parallel finding with regard to alleged constitutional error of such joinder. A careful examination of the record discloses that the district court was correct.

It needs to be remembered that neither the district court nor this court have seen or heard this petitioner and others who testified before this Wisconsin state court jury. The state record may be examined in a light favorable to the jury verdict. The appellant and his wife, Suzanne, were married on January 22, 1983, and have a daughter. Slightly more than a year later, Suzanne was hit by a car driven by Craig Kolz, a friend of the appellant, and she is now paralyzed from the chest down. This jury had before it widely varying explanations of this event and the jury's verdicts should not be disturbed unless some provision of the constitution, laws or treaties of the United States require it.

 The jury saw Suzanne and heard her testify that her marriage with the appellant had deteriorated "beyond repair," and that she was planning to leave him. On the morning of April 7, 1984, she and the appellant drove to a wooded area where she told him she wanted a divorce and the custody of their daughter. She told him that she no longer wanted to live in his parents' house. He said he would not give her custody of the child. Suzanne threatened to turn him in for burglary he had committed some years before. The appellant asserted that Suzanne would not follow through on her threat because she was also involved in some of the burglaries. (Suzanne had discussed the burglaries with police authorities in August, 1984.)

Later on the same day, Craig Kolz worked with the appellant on a lawn mower in the appellant's garage and afterward the three of them, appellant, Suzanne and Kolz, played scrabble and drank wine. At around 7:00 p.m., Suzanne took a nap and was awakened by the appellant at around 9:00 p.m. to go to a Burger King. She initially declined, being tired, but then went anyway. On the ride home, the appellant got out twice to check

the truck because he said it did not feel right. She did not notice anything wrong with the truck. The appellant got back into the truck the second time, she heard a loud hissing sound. The appellant said that the tire looked like it was going flat, but that he would try to go further. He drove 50 feet before he had to pull over because the truck was shaking. The appellant and his wife began walking along a two-lane gravel highway. The appellant was having trouble breathing because of his asthma, and an argument ensued. She started to walk in front of the appellant, and he pushed her in the shoulder. She moved on away from him and he caught up with her and pushed her again. The next thing that Suzanne remembered was being hurt, lying in a ditch, and then being taken to the hospital. She was unconscious for a few days, and was in the hospital for four months.

The appellant, testifying on his own behalf, attempted to put something of a different spin on these events. He admitted going to the Burger King with Suzanne and the incidents of the vibrating truck on the way home. He says that he told Suzanne that there was a flat tire and they walked toward home. He claims they were talking and laughing. He says that there was a loud bang, a cloud of dust and Suzanne disappeared. He says that he ran for help, shouting that a white car had hit Suzanne. The first place he came to was a bar, where some people had gathered because of the accident. He says that a woman told him that his wife had been hurt badly. He says that he went to the police and to the hospital, picked up his truck, and went home, not seeing Suzanne until the next day. He claims that he did not learn about Suzanne's intent to file for a divorce until he heard it in July, 1984, from a nurse at the hospital.

The third key witness in this case was Kolz. He was first charged with hit and run, granted immunity to testify against the appellant, and that charge dismissed upon his testifying against the appellant. Kolz testified that the appellant asked him to hit Suzanne with his car. He explained that on April 7, he initially went to the appellant's house around noon to work on a lawn mower, and then returned again about 5:00 p.m. At that time, appellant told Kolz that Suzanne wanted a divorce, and that he would not let her have custody of their child. He also told Kolz that Suzanne had threatened to turn him in for burglary. The appellant then told Kolz that he wanted to do something to change Suzanne's mind about the divorce. The appellant told Kolz that he, the appellant, would take Suzanne out to dinner, get a flat tire, walk for help, and that Kolz should hit Suzanne with his car. The appellant offered Kolz $12,000 of his aunt's inheritance and a car. The record discloses a vigorous cross-examination of Kolz, especially in regard to possible inconsistencies about the question of money. Kolz further testified that the appellant was insistent, and that the appellant asked him to "nick" Suzanne with the car. Kolz left, parked by the road where the appellant said he would be traveling, drank a quart of beer and waited for the appellant's truck to go by. Kolz said he was drunk and when he saw the appellant's parked truck, he passed appellant and Suzanne who were walking along the road and turned around and drove back, hitting Suzanne while he was driving 40 to 45 miles per hour. The jury as a trier of fact was able to hear, see and evaluate the three participants of these events in this case which occurred on April 7, 1984.

Here, the appellant launches a frontal assault on the credibility of Craig Kolz. Credibility was thoroughly aired before the jury in the state trial court. It is generally improper for a federal district court or this court exercising jurisdiction under § 2254 to superimpose its views of credibility on a witness that it has neither seen or heard. The same is true here.

The district court gave short shrift to the argument about insufficiency of evidence under *Jackson v. Virginia,* and there is no question of its constitutional sufficiency. Certainly, that evidence can be considered in the light favorable to the jury's verdict. *See United States v. Goines,* 988 F.2d 750 (7th Cir.1993).

## IV.

With reference to the criminal charges of the 1982 burglaries, the appellant

attempts an argument regarding prejudicial delay under *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The charges with regard to those four 1982 burglaries were within the relevant six-year Wisconsin statute of limitations. The appellant must make some species of an actual prejudice argument. *See United States v. Gouveia,* 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146 (1984). The appellant attempted to make some argument before the Wisconsin state trial court with regard to loss of family calendars which might verify his whereabouts, as well as that of a deceased aunt who might be able to provide an alibi. The state trial judge who saw and heard this appellant found otherwise, and specifically rejected the credibility of the appellant in this regard. There is no doubt that deference must be given to a state trial court's determination of credibility under *United States v. Carter,* 910 F.2d 1524, 1529 (7th Cir.1990), *cert. den.,* 499 U.S. 978, 111 S.Ct. 1628, 113 L.Ed.2d 724 (1991). Additionally, the state trial court had specific testimony from law enforcement officers and the district attorney with regard to the quantity of evidence that they had to prosecute these burglaries in 1985. The district attorney opined that it was not sufficient then, but was made sufficient by the key testimony of Suzanne later. Under *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), a state prosecutor, acting within the statute of limitations, may wait to build a stronger case. The Wisconsin Court of Appeals analyzed the charge of prosecutorial delay under state law principles and failed to find prejudicial delay. The district court analyzed the issue under *Marion, Gouveia* and *Lovasco,* and failed to find any constitutional error in the state trial court's decision. Recent progeny of those three Supreme Court decisions in this circuit fully support that decision. *See Pharm v. Hatcher,* 984 F.2d 783, 785–86 (7th Cir.1993) (although the Wisconsin courts hold that the Sixth Amendment right to a speedy trial arises at the time of a criminal complaint, under *Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, the federal rule is that the speedy trial clock does not begin to tick until after the information or indictment); *Wilson v. McCaughtry,* 994 F.2d 1228, 1233 (7th Cir.1993) (*quoting Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, "only the most egregious pre-indictment government delay—that which transgresses fundamental conceptions of justice ...—is proscribed by the constitution"); *Wilson,* 994 F.2d at 1234 fn. 5 ("*Gouveia* would be powerful support for adopting a requirement that defendants show actual prejudice caused by a purposeful, tactical delay by the prosecution.").

## V.

The most important, and indeed only truly troubling issue in this case has to do with the failure of the state trial court to suppress Suzanne's hypnotically refreshed testimony. After the accident, she gave vague statements to the police as to what transpired immediately before she was struck. Afterward, she independently decided to undergo hypnosis in an effort to recall more clearly the events surrounding the accident. There is no evidence that that decision was prosecutorially induced. After that hypnotic session, she was able to recall that she and the appellant were arguing about the custody of their child as they walked along the highway, that she took off running, that appellant punched her on the arm, but she ran again and then appellant caught up with her and pushed her immediately before she was hit by the Kolz car.

Given the counts in which the appellant was found guilty, with reference to the incident on April 7, 1984, under *Jackson v. Virginia,* the evidence of Kolz alone would support the conviction on those counts. To be sure, in *State v. Armstrong,* 110 Wis.2d 555, 571–72, n. 23, 329 N.W.2d 386, 394–94, n. 23, *cert. den.,* 461 U.S. 946, 103 S.Ct. 2125, 77 L.Ed.2d 1304 (1983), the Supreme Court of Wisconsin has asserted that evidence offered by witness who has had a hypnotic experience does not constitute a *per se* violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States.

The Supreme Court decision in *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), deserves careful attention here. The Supreme Court of Arkansas cre-

ated and then enforced a rule of evidence applicable in criminal cases which prohibited a criminal defendant from making affirmative use of that defendant's hypnotically-refreshed recollection. The Supreme Court of the United States granted certiorari from the Supreme Court of Arkansas to determine whether or not that state-created prohibition violated the due process clause of the Fourteenth Amendment of the Constitution of the United States. A closely-divided 5 to 4 decision held that such state-created inhibition on hypnotically-refreshed testimony proffered by a defendant in a criminal case did indeed violate the due process clause of the Fourteenth Amendment. Chief Justice Rehnquist for himself, Justices White, O'Connor, and Scalia expressed serious concerns regarding federalism, opining that the due process clause should not be used to prohibit Arkansas from developing its own approach to this important evidentiary issue. The majority opinion of Justice Blackmun in *Rock* deserves even closer attention here. It is there implicit, if not explicit, that no *per se* rule exists which forecloses the proffer of hypnotically-refreshed testimony by a defendant in a criminal case. In other words, the due process clause permits a defendant in a criminal case to use hypnotically-refreshed testimony as a defensive shield. The question which is not explicitly answered in *Rock* is whether the prosecution can use that species of testimony with reference to a witness against a defendant in a criminal prosecution as a prosecutorial sword. The answer to that question is not uniform throughout the nation or even the federal judiciary. Many state jurisdictions indeed have a *per se* rule. *See* 77 A.L.R. 4th 943. Some cases in the federal system have followed a *per se* rule, as it is readily apparent as the dissent in *Rock* well stated, there are deep concerns with regard to suggestiveness. Judicial guidelines have been established in this circuit and elsewhere which attempt to accommodate this particular evidentiary phenomenon. This circuit has done so in *United States v. Kimberlin*, 805 F.2d 210 (7th Cir.1986), and the tack taken there was similar to that of the Supreme Court of Wisconsin in *Armstrong.*

The long and short of this discussion is that there is no *per se* rule bottomed in the due process clause of the Fourteenth Amendment. Under state law, the Court of Appeals of Wisconsin held that the state trial judge in Wisconsin did not violate the procedures enunciated by the highest court in Wisconsin. This court must examine the record with a focus on whether there is a violation of the Constitution of the United States, laws or treaties. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988), *cert. den.*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

*McCormick on Evidence*, § 206 (E. Cleary, 3d ed. 1984) helps put the hypnosis evidence problem in context.

Although the scientific study of hypnosis began over 200 years ago, a single, satisfactory explanation of the phenomenon has yet to emerge. The scientific studies do make it clear, however, that people who are hypnotized or given so-called "truth serums" do not always tell the truth. On the other hand, the most directly pertinent studies do suggest that in certain circumstances hypnosis can enhance memory. The problem is that it also appears that it can alter memory. Hypnotized persons are highly suggestible, and some authorities believe that when a hypnotist encourages a subject to relate everything he can possibly remember, the subject produces fragments and approximations of memory in an effort to be cooperative. In addition, the subject may accept as his own recollections distortions inadvertently suggested by the hypnotist. Finally, the hypnotic session may reinforce the witness' confidence in erroneous memories.

Forensic applications of hypnosis can generate a variety of constitutional and evidentiary issues. A party may seek admission of statements a witness made while under hypnosis or narcoanalysis to show directly the existence of certain facts, to impeach or buttress credibility, or to show the basis for a psychiatrist or psychological opinion. Similarly, a party may offer the in-court testimony of a witness even though this testimony may be influenced or "tainted" by this person's prior exposure to such interrogation.

The courts have been most reluctant to admit such statements or testimony. In the first case to raise the issue, a California court stated in 1897 that "the law of the United States does not recognize hypnotism." Since then the courts nearly always have excluded statements made under hypnosis or narcoanalysis, regardless of whether these statements are offered as substantive evidence or as bearing on credibility. Posthypnotic testimony as to recollections enhanced or evoked under hypnosis has produced more divergent holdings. A few courts have said that such testimony is generally admissible, with objections as to its accuracy bearing on the weight that the finder of fact should give it. But even in these jurisdictions there is a trend toward insisting that rigorous safeguards be observed before the hypnotically refreshed memories are admissible. The more prevalent view is that testimony about the posthypnotic memories is inadmissible. Typically, the courts adopting a strict exclusionary rule rely on the *Frye* test of general scientific acceptance, although the same result probably could be reached by inquiring directly into the relative costs and benefits of the testimony. Indeed, the more modern cases support their invocation and application of the general acceptance standard by examining scientific testimony or literature on the value of hypnosis for recovering memories and by referring to the usual concerns with scientific evidence—its suspected tendency to overawe the jury and to consume time and resources—in a matter of particular sensitivity.

When an expert uses narcoanalysis or hypnosis in his or her examination of a person to determine whether the individual is insane, incompetent, or mentally incapacitated, the case for admissibility is much stronger. A few courts have excluded expert opinions based on these techniques, but this position seems difficult to defend even under the restrictive general acceptance standard. Most courts recognize that the opinions of the experts may be admitted and that the revelation of the details of what the subject said while under hypnosis or drugs is within the trial judge's discretion. Thus, the trial court may permit the expert to give his opinion and an explanation of the information on which the expert relied, but curb the introduction of the statements made under hypnosis or narcoanalysis.

*McCormick on Evidence, 3rd Ed.* § 206 (E. Cleary, ed. 1984) (footnotes omitted).

There is a serious judicial worry with regard to oversuggestiveness in regard to this variety of hypnotically refreshed evidence. *See* the dissent of the Chief Justice in *Rock,* 483 U.S. at 62, 107 S.Ct. at 2714. Those concerns are especially strong where it is either the police authorities or the prosecution who engage in the process or provide it. Those values are reflected in *United States v. Valdez,* 722 F.2d 1196 (5th Cir.1984), as indicated, there is no evidence of either police or prosecutorial involvement in Suzanne's decision to be hypnotized. A panel of this court carefully examined the standards for admissibility of hypnotically refreshed testimony in *Kimberlin. See* 805 F.2d at 240–49. *Kimberlin* presents greater problems for the admissibility of such testimony than does the record in this case. Both *Kimberlin* in this court and *Armstrong* in the Wisconsin Supreme Court are well within the larger due process tent provided by the majority in *Rock.* This record provides substantial corroboration which is one of the essential ingredients in this entire difficult conceptual mix. The conduct of the state trial court in Wisconsin, the decision of the Court of Appeals of Wisconsin, and the district court in this case do not run afoul of the majority in *Rock,* and is consistent with *Kimberlin.* Certainly, there was corroboration and Suzanne was subjected, quite appropriately, to extensive cross-examination by counsel of the appellant.

A pre-*Kimberlin* case in this circuit followed the lead of the Fifth Circuit in *Valdez. See United States v. Keplinger,* 776 F.2d 678, 703–705 (7th Cir.1985). *Keplinger* points to great caution but not a due process *per se* rule in a case where the proffered testimony is offered by the prosecution. That point is driven home by the concurring opinion of Judge Cudahy, *id.* at 254, which is most sensitive to the danger of suggestiveness.

He suggested six guidelines for this species of evidence:

(1) The hypnotic session should be conducted by a licensed psychiatrist or psychologist trained in the use of hypnosis and aware of its possible effects on memory so as to be able to aid in the prevention of improper suggestions and confabulation.

(2) The qualified professional conducting the hypnotic session should be independent of either party and should have little investment in the ultimate disposition of the case. The qualified professional should have minimal preconceptions about the case.

(3) Any information given to the hypnotist by either party should be noted in writing so that subsequently the extent of information that the subject received from the hypnotist may be determined.

(4) Before hypnosis, the hypnotist should obtain a detailed description of the facts from the subject, avoiding adding new elements to the subject's description.

(5) The session should be recorded, and preferably videotaped, so that a permanent record is available to ensure against suggestive procedures.

(6) Only the hypnotist and the subject should be present during any phase of the hypnotic session.

*Kimberlin,* 805 F.2d at 255, fn. 2. While these are not written in constitutional stone they are informative of relevant due process standards.

Since oral argument in this case, the subject of hypnosis has arisen in the precise context of a state criminal conviction being reviewed in a United States district court under 28 U.S.C. § 2254. *Drake v. Clark,* 14 F.3d 351, 353 (7th Cir.1994).

In *Drake,* the prosecution's witness, Nancy Ward, had suggested to the police that she be hypnotized to aid her memory, and the police who were doing the investigation employed the hypnotist. *Id.* The defense objected to Ward's testimony on the ground that she had been hypnotized by the police. *Id.* The trial court ruled that the statement given under hypnosis was inadmissible, but that any testimony recollected independently of the hypnosis was admissible. *Id.* Ward's testimony was strictly limited to the details given in her first statement taken by the police, prior to the hypnosis. *Id.* Indiana found that pre-trial hypnosis of a witness did not affect the admissibility of her statements which had been made before the hypnotism, and were independent of and free of any taint from the statement given under hypnosis. *Drake v. State,* 467 N.E.2d 686 (Ind. 1984). This court agreed, finding that it was not unfair for the trial court to exclude the defense's attempts to impeach the witness on the ground that she had been hypnotized when the witness did not testify to anything stemming from the hypnotism. *Drake* well supports the reasoning and result here.

It needs to be noted, as indicated in *Drake,* that the state rule in Indiana was before generally described as a *per se* rule. *Drake v. State,* 467 N.E.2d 686 (Ind.1984); *see also* Thomas M. Flemming, Annotation, Admissibility of Hypnotically Refreshed or Enhanced Testimony, 77 ALR 4th 944; and *Peterson v. State,* 448 N.E.2d 673 (Ind.1983). The state law of Wisconsin, however, is not so rigid. *See State v. Armstrong,* 110 Wis.2d 555, 329 N.W.2d 386 (1983), *cert. den.,* 461 U.S. 946, 103 S.Ct. 2125, 77 L.Ed.2d 1304 (1983). The Wisconsin Supreme Court has concluded that a *per se* ban on hypnotically affected testimony is unwarranted. 329 N.W.2d at 394. *Armstrong* holds that a criminal defendant's constitutional right to confront and cross-examine the witnesses against him is protected when the criminal defendant has the opportunity to cross-examine the witness and is permitted to introduce testimony on the witness' pre-hypnosis recollection and on the effect hypnosis can have on memory. *Id.* at 394.

If one might be permitted to write on a totally clean slate with reference to this subject, there would be great appeal of the kind of a *per se* rule enunciated by the Supreme Court of Arkansas in *Rock v. State,* 288 Ark. 566, 708 S.W.2d 78 (1986), paralleling concerns as to suggestiveness in Chief Justice Rehnquist's dissent in *Rock.* However, this court cannot and does not write on a clean slate in this regard, but is necessarily bound by the basic determination clear from the

authorities that the Fourteenth Amendment, or for that matter, no other provision of the Constitution of the United States is the basis for a *per se* exclusionary rule. In the absence of a *per se* exclusionary rule bottomed in the Constitution, there are constitutional values implicit in the introduction of hypnotically refreshed testimony in a criminal trial in a state court. In this case, it was done carefully by a state court judge acting under clear authority from the highest court in that state which found favor with the second highest appellate court in that state. A veteran United States district judge sitting in that state found specifically that the due process clause of the Fourteenth Amendment was not violated. All of that commands respectful attention here. The obligation remains to examine the record carefully under 28 U.S.C. § 2254 to determine whether there has been a violation of the Constitution, laws or treaties of the United States. Judge Reynolds ruled that there was no such violation, and the record in this case fully supports that ruling. There is no *per se* rule bottomed in the Constitution. There is no violation of the Constitution in the way that this particular item of evidence was admitted on behalf of the prosecution in a state court criminal proceeding. Therefore, there is no basis for relief on this issue under § 2254, and the denial of such relief by the district court should be affirmed.

### The Confrontation Clause

 There is something of a back-handed effort made here to assert that presentation of hypnotically refreshed testimony somehow violates the Confrontation clause of the Sixth Amendment of the Constitution of the United States. That argument was not fully developed before the district court, not fully developed before the state trial court in Wisconsin, and not fully developed before the Court of Appeals of Wisconsin. However, it is a very small piece of this record which caution requires us to address. Our research poses no case in which the admission of hypnotically refreshed testimony has been held to *per se* violate the Confrontation clause of the Sixth Amendment. *See Harker v. Maryland,* 800 F.2d 437, 441–43 (4th Cir.1986); *McQueen v. Garrison,* 814 F.2d 951, 961–62 (4th Cir.1987), *cert. den.,* 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed.2d 359 (1987); *Chaussard v. Fulcomer,* 816 F.2d 925, 929–31 (3d Cir. 1987), *cert. den.,* 484 U.S. 845, 108 S.Ct. 139, 98 L.Ed.2d 96 (1987); *Beck v. Norris,* 801 F.2d 242, 245 (6th Cir.1986); *Clay v. Vose,* 771 F.2d 1, 5 (1st Cir.1985), *cert. den.,* 475 U.S. 1022, 106 S.Ct. 1212, 89 L.Ed.2d 324 (1986).

### CONCLUSION

A careful review of the issues considered by the district court conducting the collateral review envisioned under § 2254 fails to disclose any reversible error in regard to the district court's decision denying such relief. That decision is now

AFFIRMED.