Lester B. MASON, Petitioner–Appellant,

v.

Salvador GODINEZ, Warden, Stateville Correctional Center, Respondent–Appellee.

No. 93–1213.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1994.

Decided Feb. 7, 1995.

Rehearing Denied March 3, 1995.

John D. Long (argued), Patrick M. Long, Chicago, IL, for petitioner-appellant.

Penelope Moutoussamy George (argued), Office of the Atty. Gen., Criminal Appeals Div., Chicago, IL, for respondent-appellee.

Before COFFEY, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Lester Mason, convicted of armed robbery by the State of Illinois and sentenced as a habitual criminal to life imprisonment,[1] appeals the district court's denial of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. He argues that he received ineffective assistance of counsel in violation of the Sixth Amendment when his trial counsel failed to file a motion to suppress evidence obtained from a warrantless entry and search of his home. Also, he contends that the evidence presented at trial was insufficient to convict him of armed robbery beyond a reasonable doubt. We affirm.

---

1. Mason was convicted of armed robbery in 1965 and 1970.

## BACKGROUND

On April 22, 1982, Elmer Schoch, the owner of Schoch's Market, and his sister, a clerk, were robbed at knife-point by a black male wearing a beige coat and a nylon stocking over his face. As the robber left the store still in disguise, he ran in front of a van occupied by Jose and Anita Huerta. The Huertas pursued him. They followed the suspect until he ran down an alley and into a fenced backyard. After driving to the corner of Warren Street, the Huertas waited several minutes before proceeding down the street. As they approached the house with the fenced backyard at 924 South Warren Street, they witnessed a black male coming out the front door. He was of the same height, weight and build as the robbery suspect but was dressed differently. The man entered a car and drove away. The Huertas testified at trial that they did not see any other black male in the vicinity during this entire episode. They then returned to the store and spoke with police officers who immediately went to the house on Warren Street.

Officer Ricky Donald secured the rear of the residence while Officers Hoskins, Cannon and Fisher went to the front and knocked on the outer screen door. Receiving no answer, they opened the screen door and knocked again. They then opened the front door which was unlocked and identified themselves as police officers. When no one responded, the officers entered the house and again identified themselves. They then proceeded to search the entire house for occupants. Although no one was found, the officers confiscated a green pair of pants sitting on a chair, a knife lying on top of the pants, and a $1 bill protruding from the pocket of the pants. The beige coat was discovered on the floor of a closet and the stocking was found in a hole in the closet's rear wall. Later that day, the police arrested Mason, who resided at 924 South Warren. The physical evidence was used against him at trial. In addition, the following testimony was presented:

Elmer Schoch testified that the robber, a black man, was slightly shorter than his sister, who is 5' 5½" tall. He noticed a three to four inch hole on the left side of the robber's mask through which the robber's high cheekbone protruded. Schoch believed he recognized this facial feature as belonging to an individual that frequented his store. Although he selected a photograph of the robbery suspect at the police station, at the time Schoch was not certain if his identification was accurate. Schoch's sister testified only that the robber was a black male, and she remembered that there was a hole on the left side of the mask.

Mrs. Huerta testified that the robber was a black male, about 5' 7" tall, weighing 180 pounds. Although she never saw the robber without a mask, she identified Mason as the same person who fled from the store after the robbery, who ran into the backyard, and who walked out of the house on Warren Street. She also identified him after looking at a group of photographs. Although Mr. Huerta identified Mason as the man who left the house, unlike his wife he could not declare unequivocally that Mason was also the same man he and his wife chased into the backyard. He stated only that Mason was of the same height, weight, build, and color as the robbery suspect and that they were probably the same person. He told the police that the suspect was 5' 10" or 5' 11" tall, weighed 175 pounds, and wore sunglasses over his stocking mask. Mr. Huerta was unable to identify the suspect from police photographs.

Mason's neighbor testified that he had been in his backyard for a couple of hours the morning of the robbery and did not see anyone run down the alley. However, he did see a black man walk out of Mason's house and drive away; he identified Mason from a group of photographs. He did not see any other black male enter or leave the house.

Charles Cannon, the arresting officer, testified that Mason was taken into custody with $54 in bills on his person. According to Cannon, Mason said that he had been visiting some friends that morning. Shortly after his arrest, Mason asked to speak with Officer Cannon. He stated that he was facing a prison term and that he would confess to the robbery if he was permitted to first speak with his girlfriend. Cannon allowed the meeting after which Mason refused to speak.

Mason's claims are properly before this court, having unsuccessfully raised the ineffective assistance of trial counsel claim on direct appeal and the insufficiency of the evidence claim in a petition for post-conviction relief.

## ANALYSIS

### A. Ineffective Assistance of Counsel

■ A defendant wishing to vacate his conviction on the basis of ineffective assistance of counsel must establish that his attorney's performance fell below an objective level of reasonableness and that he was prejudiced by his attorney's error such that the result of the proceeding was rendered fundamentally unfair or unreliable. *Lockhart v. Fretwell*, — U.S. —, —, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Where the principal allegation of ineffectiveness is the attorney's failure to file a motion to suppress evidence from an illegal search pursuant to the Fourth Amendment, the petitioner must also prove that his Fourth Amendment claim has merit, and that there is a reasonable probability that the verdict would have been different without the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). Mason's claim fails because he does not overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ In evaluating whether counsel's performance was ineffective for failing to file a motion to suppress the physical evidence in this case, we must first consider the relative merit of that motion. Mason argues that the physical evidence was obtained illegally as the result of a warrantless entry into his home. Warrantless searches and entries absent exigent circumstances and probable cause are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). On direct appeal, the state appellate court held that the search of Mason's house was conducted under exigent circumstances because the police

officers could have reasonably concluded from the Huertas' statements that the robber "may have still been in the house." In denying Mason's petition for a writ of habeas corpus, the federal district court concluded that exigent circumstances existed for the following reasons:

> [F]irst, police arrived at the scene shortly after the robbery and thus were in "hot pursuit" of a fleeing felon; second, the felon was armed with a knife and dangerous; third, if the police were uncertain as to whether the robber had left the house because the man who drove away wore different clothes, then this doubt would warrant an entry to prevent escape in case the person who left was not the suspect.

On appeal, Mason contests the existence of both probable cause and exigent circumstances to enter and search the house at 924 South Warren.

■ Probable cause means more than bare suspicion but less than absolute certainty that a search will be fruitful. *Llaguno v. Mingey*, 763 F.2d 1560, 1565 (7th Cir.1985) (en banc). The amount of information the police are required to gather before establishing probable cause for a warrantless entry is a function of the gravity of the crime and the threat of its imminent repetition. *Id.* at 1566; *Reardon v. Wroan*, 811 F.2d 1025, 1029 (7th Cir.1987). It is undisputed that a fleeing armed robbery suspect poses a serious threat to the community. Yet, the commission of a serious felony alone does not justify a warrantless entry into a person's home without probable cause that the occupant is the suspect. *See Llaguno*, 763 F.2d at 1565.

The *Llaguno* case involved a warrantless entry into a home after two Hispanic men killed four people and wounded three others in two robberies. Following a car chase, one suspect was killed and the other man fled on foot. The getaway car was registered to Vilma Llaguno, a person of possible Hispanic origin. After the officers discovered that Llaguno lived only two miles from the crash site and that the car had not been reported stolen, they proceeded to Llaguno's residence, rushed in with guns drawn and

searched it. *Id.* at 1563. The court found that this information, linking the suspect to the Llaguno residence, in addition to the gravity of the crimes committed and the possibility that there would be more shootings unless the killer was apprehended immediately was sufficient to support a finding of probable cause even though the police could not have been certain that they were in hot pursuit of the suspect when they entered the house. *Id.* at 1567.

The *Llaguno* court noted that the case was "close to the line that separates arguably reasonable from unarguably unreasonable police behavior." *Id.* at 1565. Indeed, the court found that there was considerable doubt whether probable cause existed. *Id.* Yet, given the gravity of the crimes, the court decided that the officers' other option, to wait and gather better information, was a dangerous alternative, and therefore, the search was not unreasonable as a matter of law. *Id.* at 1566–67.

█ As in *Llaguno*, the information available to the police officers after speaking to the witnesses immediately following the robbery established a weak link between the armed robbery suspect and the house at 924 South Warren. Although the state appellate and federal district courts surmised that the police officers could have believed that the armed robbery suspect was still in the house since the man who drove away wore different clothing, it is the factual basis for their initial premise, that the armed robbery suspect had entered the house in the first place, that is not strongly supported by the evidence. Up to that point, the officers knew only that a man had run into the backyard but had no evidence or eyewitness account to suggest that he actually entered the home or, alternatively, escaped through other backyards. Nonetheless, we have already noted that the amount of information the police are required to gather before establishing probable cause for an arrest is in inverse proportion to the gravity of the crime and the threat of its imminent repetition. Where a robbery suspect grabs an innocent individual and places a knife to her throat before demanding money, he engages in extremely serious and dangerous criminal activity. And although the

Huertas did not see the suspect enter the house after he ran into the backyard, they saw no one leave the area as they sat and waited by the alley for a few minutes. When these facts are taken in conjunction with the arrival of the police at the house less than an hour after the witnesses chased the suspect into the yard, we believe there is some merit to the argument that the police officers had probable cause to enter the house without a warrant.

█ Whether exigent circumstances existed presents a far easier question. Exigent circumstances exist when there is a compelling need for official action and no time to secure a warrant, *United States v. Arch,* 7 F.3d 1300, 1304 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1123, 127 L.Ed.2d 431 (1994), such as when the police officers are in hot pursuit of the suspect. *United States v. Santana,* 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976). The record indicates that the police officers arrived at the scene of the robbery shortly after it occurred. They spoke with the victims as well as the Huertas and then proceeded directly to the house to investigate. Although the police officers' belief that exigent circumstances existed is reviewed for its objective reasonableness, *United States v. De Soto,* 885 F.2d 354, 368 (7th Cir.1989), we note that the officers' actions subsequent to their arrival at the house are consistent with the hot pursuit exception in that they immediately secured both entrances and swiftly proceeded through the house in search of the suspect. Given the timing of these events, the officers assuredly were in hot pursuit of the suspect.

While it is certainly arguable whether the police officers had probable cause to enter Mason's home in search of a suspect given the limited information they had linking the suspect to that particular house, it is important to remember that the only constitutional violation raised in this case is whether Mason has been provided with effective assistance of counsel. *Strickland* teaches us that we must be highly deferential of counsel's performance for it "is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a par-

ticular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Both the state appellate court and the federal district court deduced that there was no Fourth Amendment violation and hence, no ineffective assistance of counsel rendered in this case. Whether the existence of probable cause is as apparent as others have concluded, we do not believe, based on these facts, that the attorney's failure to file a motion to suppress was unreasonable.

Furthermore, in deciding the merits of a Sixth Amendment claim, we must consider the sufficiency of counsel's overall performance. *Kimmelman,* 477 U.S. at 386, 106 S.Ct. at 2588–89; *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir.1990). Mason's attorney thoroughly cross-examined both the victims and the witnesses to demonstrate the discrepancies in their descriptions of the robbery suspect. In addition, counsel contested the application of the habitual offender statute's mandatory life sentence at sentencing and filed a post-trial motion arguing that the eyewitness identification evidence was insufficient to convict Mason as the perpetrator of the crime. The record here indicates that counsel aggressively defended Mason throughout the proceedings. We hold, therefore, that the failure of Mason's attorney to file the motion to suppress did not fall outside the range of reasonably competent representation and that he did not render constitutionally deficient assistance of counsel.

**B.** *Sufficiency of the Evidence*

On habeas review, we will reverse the jury verdict based on the insufficiency of the evidence only if the record contains no evidence from which a rational trier of fact could find guilt beyond a reasonable doubt. *Biskup v. McCaughtry,* 20 F.3d 245, 248 (7th Cir.1994). We view the evidence in the light most favorable to the government. *Id.*

Except for the height discrepancies, the description of the robbery suspect given by the Huertas and the victims compared favorably with Mason's general physical characteristics. In the first few minutes after the Huertas followed the suspect into the

alley, Mason was the first and only black person to appear either in the alley or on Warren Street. Mason emerged from the house with the fenced backyard into which the suspect had fled. Moreover, shortly after his arrest, Mason stated that he would confess to the robbery after he spoke with his girlfriend. A reasonable juror could conclude that an individual would not agree to confess to a crime he did not commit. Finally, the coat, the pants, the knife, and the mask used in the robbery were found in Mason's home. Based on this evidence, the jury could find Mason guilty of the armed robbery beyond a reasonable doubt.

### CONCLUSION

The failure of Mason's attorney to file a motion to suppress did not constitute ineffective assistance of counsel and there was more than enough evidence from which a jury could find guilt beyond a reasonable doubt. The district court's denial of the petition for a writ of habeas corpus is AFFIRMED.