48 F.3d 1222
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Floyd NELSON, Petitioner-Appellant,
v.
J. Ronald HAWS and the Illinois State Attorney General,
Respondents-Appellees.
 No. 92-4130.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 24, 1995.*
Decided March 8, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Floyd Nelson, currently incarcerated at the Danville Correctional Center, appeals the magistrate judge's denial of his petition for a writ of habeas corpus. 28 U.S.C. Secs. 636(c), 2254. We affirm.
 
 
 2
 In February 1985, two or three men entered a home in East St. Louis and fatally shot one adult and seriously injured Mario Elem, a child. Brothers Andre and Theodore Wright, who were related to several of the occupants of the home, as well as Nelson were arrested two hours later at Theodore Wright's residence. Although appointed separate counsel, Nelson and Theodore Wright were tried jointly before a jury, and both were convicted of murder, attempted murder, and armed violence.
 
 
 3
 Nelson now claims that he was denied effective assistance of trial counsel because his attorney failed to move for a severance for Nelson from his co-defendant's trial and to object to certain misrepresentations of the evidence during closing arguments. To prove ineffective assistance of counsel, Nelson must establish that his attorney's performance fell below an objective level of reasonableness and that he was prejudiced by his attorney's error such that the result of the proceeding was rendered fundamentally unfair. Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993); Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
 
 
 4
 First, Nelson contends that Wright's counsel pursued a defense which was so antagonistic to his own that the failure of Nelson's counsel to pursue a motion to sever denied him his right to a fair trial. Although Nelson admits that before trial neither he nor Wright made any incriminating statements against each other, he contends that during closing argument, Wright's counsel switched tactics and used the testimony of Mario Elem to deflect sole culpability upon Nelson. Mario, who was eight years old at the time of trial, identified Nelson in court as the person who shot him but could not provide an in-court identification of Wright even though Wright was in the courtroom. (R. 30, Trial Tr. at 189-91).
 
 
 5
 The failure to hold a separate trial for each defendant constitutes a federal constitutional violation recognizable on collateral review of a state court conviction only if the prejudice from a joint trial was so great as to deny the defendant a fair trial. Biskup v. McCaughtry, 20 F.3d 245, 249 (7th Cir.1994). A joint trial may be fundamentally unfair where mutually antagonistic or inconsistent defenses are presented or if one defendant's actual conduct prejudices another. Lewis v. Huch, 964 F.2d 670, 676 (7th Cir.1992); see also Zafiro v. United States, 113 S.Ct. 933, 937 (1993) (mutually antagonistic defenses are not per se prejudicial).
 
 
 6
 Nelson does not show that he was prejudiced or that he was unable to obtain a fair trial. Both defendants pursued a defense of mistaken identity, and Nelson identifies only two comments during the closing argument of Wright's counsel where counsel allegedly attempted to exculpate his client by implicating Nelson. Wright's counsel first argued that a person who just shot a relative would not return home whereas Nelson was arrested in Wright's residence; he also noted that Mario Elem identified only Nelson and not Wright.[1] Finger pointing during a joint trial, however, is insufficient to compel the severance of trials, and counsel's closing remarks did not lead to an unjustifiable inference of Nelson's guilt. United States v. Ramirez, Nos. 93-4056 & 93-4059, slip op. at 7 (7th Cir. Jan. 19, 1995); Madyun v. Young, 852 F.2d 1029, 1034 (7th Cir.1988). Furthermore, the jury was made aware at least once by the government's attorney that the attorneys' statements during closing arguments were not evidence. (R. 30, Trial Tr. at 504). Finally, Mario Elem, whose testimony spurred the comments of Wright's counsel, was the government's witness and would have testified against Nelson at either a joint or an individual trial. See United States v. McAnderson, 914 F.2d 934, 949 (7th Cir.1990) (no prejudice established where evidence of prior bad acts would have been admissible in individual trial as well). Accordingly, we hold that the performance of Nelson's attorney was not inadequate in failing to move for a severance and that Nelson was not denied his right to a fair trial.
 
 
 7
 Next, Nelson claims that his attorney's failure to object to misstatements made during closing arguments regarding the evidence presented at trial unfairly influenced the jury. In their closing arguments, both the prosecutor and counsel for co-defendant Wright stated to the jury that Dan Hudson, who had witnessed the shootings, testified that he had seen a familiar blue car leave the scene of the crime. A blue car was found at Wright's home when he and Nelson were arrested. The statements were inaccurate, however, because Hudson merely identified the blue car from some photographs as belonging to Wright's brother Andre. Nelson contends that this "fabrication" was the government's strongest evidence linking him to the crime, and thus, counsel's failure to object to the statements or to move for a mistrial prejudiced him.
 
 
 8
 As Nelson was not the owner of the blue vehicle, we do not believe that the misstatements necessarily incriminated him anymore than his presence in Wright's home at 4:00 a.m. after the shootings already did. Moreover, based on the state court's factual findings, see Biskup, 20 F.3d at 248 (state court's findings of historical facts are presumed correct), we disagree with Nelson's assessment of the evidence supporting his guilt. Four occupants of the house at the time of the shooting including two of co-defendant Wright's cousins, Hudson and James Brown, and an aunt, Rosie Gaines, identified Nelson and Wright as the intruders. Hudson had known Nelson for four years, and Milton Elem had seen him on four previous occasions. Thus, we are convinced by the strong eyewitness identification from individuals who had known Nelson prior to the shootings that the absence of an admonishment to the jury to disregard the misstatements did not prejudice Nelson's defense nor alter the outcome of the trial.
 
 
 9
 Nelson has not demonstrated that he received ineffective assistance of counsel and we therefore AFFIRM the district court's denial of his petition for a writ of habeas corpus.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). Petitioner-Appellant filed such a statement. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied, and the appeal is submitted on the briefs and the record
 
 
 [1]
 Nelson objects to the following statements made by the Assistant State's Attorney during closing argument:
 But I think to myself, Theodore, you had to be high on dope. This case doesn't make any sense. This murder doesn't make any sense. Killing your relatives. But when the police go and arrest him at his home, what is his condition? He is not intoxicated. He is not high. He answers the door. He says come in. I think to myself, well, Theodore, you are dumb because within an hour and a half after this crime you go to your house. You leave four eyewitnesses that know where you live and you go to your house? Floyd doesn't go to his house. Andre doesn't go to his house.
 (Trial Tr. at 517).
 The curious thing to me is all of these five eyewitnesses, there is only one who testified to events that gave him the opportunity to observe faces of his assailants. It was the one whose testimony the State is left with, Mario, when he says, "Theodore isn't here." [Assistant State's Attorney:] "Look around the courtroom." "No." "Is Floyd here?" "There."
 (Trial Tr. at 521).