78 F.3d 586
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Willie JOHNSON, Petitioner-Appellant,
v.
Thomas PAGE and James E. Ryan, Respondents-Appellees.
 No. 95-3122.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 29, 1996.*
Decided March 4, 1996.
 
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 After a bench trial, Willie Johnson was convicted of murder in the death of David McCraken, the one-year-old son of Johnson's live-in girlfriend, Michelle. After exhausting his state court remedies on appeal, Johnson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent did not argue in either the district court or in this court that Johnson failed properly to exhaust his state court remedies or that he procedurally defaulted on his claims before seeking federal habeas corpus relief.
 
 
 2
 In his petition, Johnson alleged four grounds for habeas corpus relief, but on appeal he pursues only two of them. Johnson first claims that the state lacked sufficient evidence as a matter of law to convict him of David's murder. In the alternative, Johnson claims that even if the state had sufficient evidence to hold him responsible for David's death, it lacked sufficient evidence of his intent, and so could convict him only of manslaughter, rather than murder.
 
 
 3
 The case against Johnson consisted primarily of the testimony of Dr. Yuksel Konacki, the medical examiner who performed the autopsy on David, the testimony of Michelle McCraken and Johnson's statement to the police. Dr. Konacki testified that David died as a result of multiple internal injuries due to blunt trauma. David suffered hemorrhaging in his skull, spine, lungs and right kidney. Dr. Konacki testified that violently shaking or throwing David could have caused such injuries, hemorrhages in David's eyes indicated that he had, in fact, been shaken violently. David also had numerous bruises, which could have been caused by being struck or thrown. In addition to the recent injuries, Dr. Konacki found scars and healing abrasions which indicated older injuries.
 
 
 4
 Michelle McCraken testified that on the night David died, she left David and his two-year-old brother, Antonio, alone with Johnson while she attended a party. She returned home at 3:00 a.m., and at 4:00 a.m. she awoke to David's coughing. McCraken testified that she changed David's diapers, and that she did not notice any marks or bruises on David at that time. At 9:30 a.m., she discovered that David was not breathing and that his body was covered with bruises. She called paramedics who transported David to a hospital, but David never revived.
 
 
 5
 After initially denying having abused David the night he died, Johnson told the police that David's crying awakened him at 1:30 a.m. Johnson admitted that he became angry, shook David, shouted "Shut up!" and then threw the child onto a couch. Johnson told the police that he originally lied to them because he thought he had killed David.
 
 
 6
 Based on this evidence, the court found Johnson guilty of first degree murder. The judge declared that he believed that Johnson had done the acts which caused David's death, and that Johnson knew that shaking and throwing David could cause death or great bodily harm to the infant.
 
 
 7
 Johnson nevertheless maintains in this appeal that the state failed to prove beyond a reasonable doubt that his abuse of David at 1:30 a.m. caused David's death. At Johnson's trial, Dr. Michael Kaufman, a private pathologist retained by the defense, testified that based upon David's body temperature when he brought into the hospital and his lack of rigor mortis, David died after 9:00 a.m. He further testified that given the stage of advancement of the bruises on David's body, the injuries that killed David could have been inflicted no more than two hours before David died. Johnson argues that Dr. Kaufman's testimony creates a reasonable doubt as to whether his abuse of David at 1:30 a.m. could have been the cause of death.
 
 
 8
 Johnson's argument, however, largely ignores the testimony of Dr. Mitra Kalekar, also a forensic pathologist employed by the Medical Examiner's Office. Dr. Kalekar testified for the prosecution in rebuttal that David could have been dead for anywhere from one to six hours before being found at 9:30 a.m. and that the injuries that killed David could have been inflicted up to six hours before his death. Johnson's argument also overlooks Dr. Konacki's testimony that David's injuries were inflicted "maybe a few hours [or] up to a day" before David died.
 
 
 9
 It is not clear either from Johnson's petition or his appellate brief whether he is claiming that the prosecution failed to offer any evidence proving that his actions could have been the cause of David's death, or whether he is claiming that Dr. Kaufman's testimony conflicts with Drs. Konacki and Kalekar's, thereby creating a reasonable doubt sufficient to warrant his acquittal. In either case, Johnson is wrong.
 
 
 10
 If the prosecution had proffered no evidence that supported its theory that Johnson's actions at 1:30 a.m. could have caused David's death, then granting the petition would be appropriate. Mason v. Godinez, 47 F.3d 852, 857 (7th Cir.1995), cert. denied, 116 S.Ct. 125 (1995). But Drs. Konacki and Kalekar's testimony directly supported the prosecution's theory that Johnson's abuse of David at 1:30 a.m. killed him. Taken together, Drs. Konacki and Kalekar's testimony indicates that David could have died as early as 3:00 a.m., and the injuries that caused his death could have been inflicted anywhere up to a day before he died. Thus, if Johnson is claiming that the prosecution put forward no evidence to support his conviction, he is clearly incorrect.
 
 
 11
 Alternatively, Johnson may be claiming that because Dr. Kaufman's testimony directly conflicts with Drs. Konacki and Kalekar's, there remains a reasonable doubt as to whether his actions could have caused David's death. To have his conviction overturned for insufficiency of evidence, however, Johnson must overcome a very high legal hurdle: he must show that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Lemons v. O'Sullivan, 54 F.3d 357, 364 (7th Cir.1995), cert. denied, 116 S.Ct. 528 (1995) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 12
 A simple conflict between the prosecution and defense's evidence does not, in and of itself, demonstrate that no rational trier of fact could have found him guilty beyond a reasonable doubt. It is both the prerogative and the duty of the trier of fact to choose between conflicting evidence and hypotheses, see, for example, Jackson, 443 U.S. at 319; Ticey v. Peters, 8 F.3d 498, 504 (7th Cir.1993); United States ex rel. Shore v. O'Leary, 833 F.2d 663, 667-68 (7th Cir.1987), and to determine which witnesses to credit or discount. Lemons, 54 F.3d at 364. In this case, the trial court chose to credit the testimony of Drs. Konacki and Kalekar and to discount the testimony of Dr. Kaufman. Where the prosecution and the defense submit directly conflicting testimony, the fact finder's choice as to which witnesses to credit or discount cannot be irrational, see, for example, Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985), at least where the credited testimony is neither wholly incredible nor physically impossible. Thus, we cannot reexamine the trial court's choice to credit the prosecution witnesses' testimony.
 
 
 13
 Johnson argues that "[Dr. Kaufman's interpretation of these] scientific facts cannot be discounted by the prosecution or by this Court." This argument, however, misses the relevant legal test as enunciated in Jackson. The only relevant question for this court is: Having discounted Dr. Kaufman's testimony while crediting Drs. Konacki and Kalekar's, could any rational trier of fact have found beyond a reasonable doubt that Johnson's actions caused David's death? The answer, quite clearly, is: Yes. Accordingly, Johnson's insufficiency of evidence claim fails.
 
 
 14
 Johnson's second claim on appeal is that the prosecution failed to prove that he intended to kill David, and thus, he could at most be convicted of manslaughter, rather than first degree murder. At the outset, we reject Johnson's claim that the respondent forfeited this claim by failing to respond to it. In Paragraph 5 of its "Answer to Petition for a Writ of Habeas Corpus," the respondent stated that "any rational trier of fact could have found the elements of first degree murder beyond a reasonable doubt." The respondent then developed this argument in its "Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus." One of the elements of first degree murder is intent. By arguing that the trier of fact rationally could have found all the elements of first degree murder, the respondent was necessarily arguing that the trier of fact could have found the element of intent. Thus, the respondent has not forfeited this claim.
 
 
 15
 Turning now to the merits of this claim, Johnson argues that under Illinois law, the prosecution failed to prove one of the necessary elements of murder--intent--and therefore, he could at most be convicted of manslaughter. Johnson claims that although his conduct was reckless, he "neither intended nor foresaw that death would ensue."
 
 
 16
 Johnson's lack of specific intent to bring about David's death is irrelevant. The trial court convicted Johnson under Ill.Rev.Stat.1989, ch. 38, par. 9-1(a)(2), which states:
 
 
 17
 A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death ... [h]e knows that such acts create a strong probability of death or great bodily harm to the individual....
 
 
 18
 To convict a defendant under Section 9-1(a)(2), the prosecution need not prove that the defendant harbored a subjective intent to kill the victim; rather, "the law permits the [trier of fact] to infer from the character of the defendant's acts that he knew or should have known that his conduct would create a strong probability of death or great bodily harm." People v. Palmer, 395 N.E.2d 713, 721 (Ill.App.Ct.1979). Whether the defendant's actions created so strong a probability of causing death or great bodily harm as to warrant conviction for murder or were merely "likely" to cause death or bodily harm--in which case a manslaughter conviction would be warranted--is a question of fact. Id. Thus, to sustain Johnson's murder conviction, the prosecution needed only to produce sufficient evidence from which the trial court could have determined that Johnson knew or should have known that his actions created a severe risk of death or harm. We must affirm the trial court's determination unless it is beyond the pale of rationality.
 
 
 19
 Here, Johnson initially lied to police about having shaken David, apparently because he believed that he had shaken the infant with enough force to kill him. Moreover, the trial court heard evidence of the extent of David's bruises and injuries, as well as evidence of prior injuries. From this evidence, the trial court rationally could have concluded that Johnson knew or should have known that his actions created a strong probability of death or great bodily harm. The Illinois Supreme Court held in a case similar to this one that "[a] full-grown man who violently shakes [ ] an infant cannot help but be aware that his actions create a strong probability of great bodily harm or death." People v. West, 560 N.E.2d 594, 607 (Ill.1990), cert. denied, 500 U.S. 928 (1991). See also People v. Myrick, 651 N.E.2d 637, 640 (Ill.App.Ct.1995) ("It was not unreasonable for the trier of fact to find that when [the] defendant was shaking the baby and throwing him across the room, he knew such acts created a strong probability of death or great bodily harm.") Accordingly, the trial court reasonably could have inferred from the evidence presented by the prosecution that Johnson had the requisite mental state to sustain a conviction for first degree murder.
 
 
 20
 AFFIRMED.
 
 
 
 *
 After examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case. The appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)